**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MAXIMILIANO DIAZ PEREZ, LORENZO SUAR PANJOJ, MARIA LUCRECIA TZAMPOP GOMEZ, MAILY ADRIANA VELASQUEZ MORALES AND JESUS CALEL, *on behalf of themselves and similarly situated employees*, and ARACELY ROMAN LOPEZ, ALBERTINA DIAZ PEREZ, RODDY E GOMEZ, JULIO SUAR US, JOSEFINA COLAJ CIPRIAN, SAMUEL GRAVE MONTECINOS, ROSALINA GOMEZ SUAR, ANDRES DE LEON TIX, YENI MENDEZ SICAL, JOSE WILLIAM BOC GIL, JOSE ANTONIO AZAÑON ULUAN, MARVIN E TOMIN JORGE, PETRONILA LARIOS ZACARIAS, EVELYN VELASQUEZ MORALES, SINDY GONZALEZ CAHUEC, JUAN CARLOS VILLATORO AZAÑON, VICENTE GUTIERREZ DE LA CRUZ, individually, | |
| Plaintiffs, | Case No. 1:25-cv-13129-LTS |
| v. | Judge Leo T. Sorokin |
| MARDER TRAWLING, INC., TODD MICHALIK, individually, SEAN GALLIGAN, individually, FRANCISCO IXCOTOYAC DIONICIO, individually, and WORKFORCE UNLIMITED, INC. and ANDREW WILKES, individually, | |
| Defendants. | |

**FIRST AMENDED COLLECTIVE ACTION COMPLAINT**

Plaintiffs[1] Maximiliano Diaz Pérez (“M. Diaz” or “Marder Representative Plaintiff”) and

[1] Plaintiffs were recruited and/or hired by Defendant Francisco Ixcotoyac Dionicio. In the case of Plaintiff Diaz, for example, he has been put on payroll as Maximiliano Diaz and has also alternately been known as Maximiliano Perez. In the case of Plaintiff Suar, he has been put on payroll as Adrian Lopez Diaz, and has also alternately been known as Lorenzo Suar. In the case of Plaintiff Tzampop, she has been put on payroll as Lucrecia Tzampop Gonzalez and has alternately been known as Lucrecia Tzampop and Lucrecia Tampop. In the case of Plaintiff Velazquez, she has been put on payroll as Marleny Lopez and

Lorenzo Suar Panjoj, Maria Lucrecia Tzampop Gomez, Maily Adriana Velásquez Morales and Jesus Calel (respectively "L. Suar", "Tzampop", "Velásquez" and "Calel" or together the "Workforce Representative Plaintiffs"), on behalf of themselves and all other similarly situated employees, known and unknown, and individual Plaintiffs Aracely Roman Lopez, Albertina Diaz Perez, Plaintiff Roddy E. Gomez, Julio Suar Us, Josefina Colaj Ciprian, Samuel Grave Montecinos, Rosalina Gomez Suar and Andres De Leon Tix, Yeni Mendez Sical, Jose William Boc Gil, Jose Antonio Azañon Uluan, Marvin E Tomin Jorge, Petronila Larios Zacarias, Evelyn Velasquez Morales, Sindy Gonzalez Cahuec, Juan Carlos Villatoro Azañon, Vicente Gutiérrez de La Cruz, (respectively "Roman", "A. Diaz", "Gomez", "J. Suar", "Colaj", "Grave", "R. Suar" and "De Leon", "Y. Mendez", "Boc Gil", "Azañon Uluan", "Tomin Jorge", "Larios Zacarias, "E. Velasquez Morales", "Gonzalez Cahuec", "Villatoro Azañon" and "Gutierrez de La Cruz") (collectively "Individual Plaintiffs") for their Complaint against Marder Trawling, Inc. Todd Michalik, individually, and Sean Galligan, individually, (respectively "Marder", "Michalik" and "Galligan" or together the "Marder Defendants), Francisco Ixcotoyac Dionicio ("Ixcotoyac"), individually, and Workforce Unlimited, Inc. and Andrew Wilkes (respectively "Workforce" and "Wilkes" or together the "Workforce Defendants") (collectively "Defendants"), state as follows:

## I. INTRODUCTORY STATEMENT

1. This lawsuit is brought to recover wages extorted and stolen from low-wage residents of Massachusetts and Rhode Island who, through a scheme involving Marder, a New Bedford area seafood processing company, and its staffing agency, Workforce, and the respective officers, agents and employees of each, in which workers, both directly hired by Marder and contracted to work at Marder through Workforce, were forced to pay extorted cash payments of

has also alternatively been known as Adriana Velazquez and Adriana Velazquez Morales.

approximately $100 per week to the Plant Manager at Marder as a condition of employment in violation of federal and Massachusetts law and, for those contracted to work through Workforce who lived in Rhode Island, were required to take transportation from Rhode Island to Marder and pay approximately $60 per week to Marder and Workforce, and their respective agents and employees, as a condition of employment.[2]

## II. NATURE OF THE CASE

2. This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"), M.G.L. c. 149, §§ 148 ("MA Wage Act") and 159C(d) ("MA Temporary Workers Right to Know Law", hereafter the "MA TWRTK Law") and M.G.L. c. 151 § 1. /1 *et seq.* ("MA Minimum Wage Law") for claims from January 1, 2021 to May 27, 2025 ("Relevant Time Period") against the Defendants[3] and their agents for: (a) Defendants' failure to pay overtime wages as a result of unlawful coerced weekly kickback charges ("Extorted Kickback Deductions") and excessive ride charges ("Excessive Ride Charge Deductions") from the wages of the Collective Representative Plaintiffs and other similarly situated employees, and the Individual Plaintiffs, whether directly hired or contracted through Workforce and assigned to Marder (the "Collective") in which they worked in excess of forty (40) hours in individual work weeks in violation of the FLSA's requirement that wages be paid "free and clear" and in violation of the MA Minimum Wage Law and the MA Wage Act; (b) Defendants' unlawful deduction of funds for Extorted Kickback Deductions from the wages of the Collective Representative Plaintiffs and other

[2] Prior to the filing of this lawsuit, Defendant Ixcotoyac did make partial payments to some of the Plaintiffs toward the underlying owed wages and statutory damages. The specific amounts will be determined in discovery and Plaintiffs intend to treat those payments as a set-off against the total amount owed to each Plaintiff and member of the Collective.

[3] For clarity and as indicated in relevant counts in the complaint, claims by directly hired Marder employees are explicitly not directed at any of the Workforce Defendants.

similarly situated employees, and the Individual Plaintiffs; (c) Defendants' unlawful Excessive Ride Charge Deductions from the Workforce Collective Representative Plaintiffs and members of the Workforce Collective and the Individual Workforce Plaintiffs, who lived in Rhode Island, were hired by Workforce Unlimited, Inc. and assigned to work at Marder Trawling, Inc., as the charges for transportation from Rhode Island to Marder were greater than the actual cost of the transportation and were in excess of 3% of the daily wage of the Workforce Collective Representative Plaintiffs and members of the Workforce Collective and the Individual Workforce Plaintiffs in violation of the MA TWRTK Law; (d) Defendants Workforce and Wilkes' failure to provide the Workforce Plaintiffs with a notice containing information about any charges for transportation by Workforce or Marder, the work site employer, or about their rights under the MA TWRTK Law, in violation of the MA TWRTK Law, and (e) retaliation against Plaintiffs Defendants on behalf of Maily Velasquez Morales, Suar Panjoj, Evelyn Velasquez Morales, Gonzalez Cahuec and Larios Zacarias.

3. For claims arising under the FLSA for the unlawful Extorted Kickback Deductions and Excessive Ride Charge Deductions, the Collective Representative Plaintiffs bring this suit as a collective action pursuant to Section 216(b) of the FLSA. 29 U.S.C. §216(b). The consent to represent of the Collective Representative Plaintiffs are attached hereto as Group Exhibit A.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. §216(b). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district and as Defendants have

maintained offices and transacted business within this jurisdiction at all relevant times.

## IV. PARTIES

**Plaintiffs**

*Marder Plaintiffs*

6. At all relevant times, Marder Plaintiff Maximiliano Diaz Perez has:

   a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

   b. handled goods that have moved in interstate commerce;

   c. been employed by Defendant Marder and Defendant Ixcotoyac from approximately August 2023 to the present;

   d. earned between $19.25 and $20.25 per hour for his work at Marder; and

   e. worked for and been an "employee" of Defendants Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Minimum Wage Law.

7. At all relevant times Plaintiff Aracely Roman Lopez has:

   a. resided in and been domiciled in Providence, Rhode Island;

   b. handled goods that have moved in interstate commerce;

   c. been employed by Defendant Marder and Defendant Ixcotoyac from approximately June 2023 until at least June 2025;

   d. earned between $15 and $18 per hour for her work at Marder; and

   e. worked for or been an employee worked for and been an "employee" of Defendants Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Minimum Wage Law.

8. At all relevant times, Plaintiff Albertina Diaz Perez has:

   a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

   b. handled goods that have moved in interstate commerce;

c. been employed at Defendant Marder facilities and supervised by Defendant Ixcotoyac from approximately August 2023 to the present;

d. earned between $15 and $19 per hour for her work at Marder; and

e. worked for or been an employee worked for and been an “employee” of Defendants Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Minimum Wage Law.

9. At all relevant times Plaintiff Roddy E Gomez has:

a. resided in and has been domiciled in Cranston, Rhode Island;

b. handled goods that have moved in interstate commerce;

c. been employed by Defendant Marder and Defendant Ixcotoyac from approximately 2023 to the present;

d. earned between $15 and $20 per hour for his work at Marder; and

e. worked for or been an employee worked for and been an “employee” of Defendants Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Minimum Wage Law.

10. At all relevant times Plaintiff Julio Suar Us has:

a. Resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed at Defendant Marder facilities and supervised by Defendant Ixcotoyac from approximately 2019 to the present with a gap in time due to the COVID-19-related plant closure;

d. Earned between $15 and $20 per hour for his work at Marder; and

e. worked for and been an “employee” of Defendants Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Minimum Wage Law.

11. At all relevant times Plaintiff Josefina Colaj Ciprian has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Defendant Marder and Defendant Ixcotoyac from approximately 2023 to the present;

d. earned between $19 and $20 per hour for her work at Marder; and

e. worked for and been an "employee" of Defendants Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Minimum Wage Law.

*Workforce Plaintiffs*

12. At all relevant times Plaintiff Jesus Calel has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately March 2024 to May 2025;

d. earned between $15 and $19 per hour for his work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law;

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law; and

g. single damages claims for lost wages in this lawsuit for $7,000 or less, exclusive of all available statutory damages or penalties.

13. At all relevant times Plaintiff Samuel Grave Montecinos has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately March 2024 to the present;

d. earned between $15 and $19 per hour for his work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited,

Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law and;

g. single damages claims for lost wages in this lawsuit for $7,000 or less, exclusive of all available statutory damages or penalties.

14. At all relevant times Plaintiff Rosalina Gomez Suar has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately October 2024 to the present;

d. earned between $15 and $19 per hour for her work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law;

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law; and

g. single damages claims for lost wages in this lawsuit for $7,000 or less, exclusive of all available statutory damages or penalties.

15. At all relevant times Plaintiff Andres De Leon Tix has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately May 2024 to January 2025;

d. earned between $15 and $20 per hour for his work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited,

Inc. and Andre Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law;

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law; and

g. single damages claims for lost wages in this lawsuit for $7,000 or less, exclusive of all available statutory damages or penalties.

16. At all relevant times, Workforce Plaintiff Lorenzo Suar Panjoj has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately 2019 to the present with a gap in time due to the COVID-19-related plant closure;

d. earned between $16 and $20 per hour for his work at Marder;

e. worked for and been an “employee” of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

17. At all relevant times, Workforce Plaintiff Maria Lucrecia Tzampop Gomez has:

a. resided in and been domiciled in Providence, Rhode Island and then, subsequently in New Bedford, Massachusetts within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately March 2023 to the present;

d. earned between $15 and $18 per hour for her work at Marder;

e. worked for and been an “employee” of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

18. At all relevant times, Workforce Plaintiff Maily Adriana Velásquez Morales has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately November 2023 to the October 2025;

d. earned between $17.50 and $19 per hour for her work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

19. At all relevant times, Plaintiff Yeni Mendez Sical has:

a. resided in and been domiciled in Providence, Rhode Island;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately 2022 to May 2025;

d. earned between $15 and $20 per hour for her work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

20. At all relevant times, Plaintiff Jose Antonio Azañon Uluan has:

a. resided in and been domiciled in Providence, Rhode Island;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately 2023 to December 2024;

d. earned between $15 and $20 per hour for his work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac from as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

21. At all relevant times, Plaintiff Jose William Boc Gil has:

a. resided in and been domiciled in Providence, Rhode Island;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately March 2024 to present;

d. earned between $15 and $20 per hour for his work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

22. At all relevant times, Plaintiff Marvin Tomin Jorge has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately 2013 or 2014 to May 2026 with a gap in time due to a Covid-19-related plant closure;

d. earned between $15 and $20 per hour for his work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac from as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

23. At all relevant times, Plaintiff Petronila Larios Zacarias has:

a. resided in and been domiciled in Providence, Rhode Island;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately September 2024 to approximately October 2025;

d. earned between $15 and $19 per hour for her work at Marder;

e. worked for and been an “employee” of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

24. At all relevant times, Plaintiff Evelyn Velasquez Morales has:

a. resided in and been domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately May 2023 to October 2025;

d. earned between $15 and $19 per hour for her work at Marder;

e. worked for and been an “employee” of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

25. At all relevant times, Plaintiff Sindy Gonzalez Cahuec has:

a. resided in and been domiciled in Providence, Rhode Island;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately September 2024 to October 2025;

d. earned between $15 and $19 per hour for her work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac from as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

26. At all relevant times, Plaintiff Juan Carlos Villatoro Azañon has:

a. resided in and been domiciled in Providence, Rhode Island;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately 2013 or 2014 to March 2024;

d. earned between $15 and $20 per hour for his work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

27. At all relevant times, Plaintiff Vicente Gutierrez de la Cruz has:

a. resided in and been in domiciled in New Bedford, Massachusetts, within this judicial district;

b. handled goods that have moved in interstate commerce;

c. been employed by Workforce and assigned to work for Marder and Defendant Ixcotoyac from approximately 2023 to the present;

d. earned between $16 and $20 per hour for his work at Marder;

e. worked for and been an "employee" of Defendants Workforce Unlimited, Inc. and Andrew Wilkes as that term is defined by the FLSA, the MA Wage

Act, the MA Minimum Wage Law and the MA TWRTK Law; and

f. worked for and been jointly employed, along with Workforce and Wilkes, by Marder Trawling, Inc. and Francisco Ixcotoyac as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

**Defendants**

28. At all relevant times, Defendant Marder Trawling, Inc. has:

a. been a corporation organized under the laws of the state of Massachusetts and been located in and conducted business within this judicial district;

b. been an "enterprise" as defined by in Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of Section 3(s)(1)(A) and Defendant's annual gross volume of sales or business done exceeds $500,000, exclusive of excise taxes;

c. had two or more employees who have handled goods which have moved in interstate commerce;

d. through the Marder Plant Manager and other management employees of Marder, had the authority to, *inter alia*, hire and fire, discipline, direct, set schedules for, and set wages for the Marder Plaintiffs and the members of the Collective who were directly hired employees of Marder;

e. been the "employer" of the Marder Plaintiffs and members of the Collective who were directly hired employees of Marder as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law;

f. through the Marder Plant Manager and other management employees of Marder, had the authority to, *inter alia*, contract for and terminate the assignment of, discipline, direct, set schedules for, and set wages for the Workforce Plaintiffs and the Collective;

g. been a joint "employer" of the Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law; and

h. has been a "work site employer" of Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs as that term is defined by the MA TWRTK Law.

29. At all relevant times, Defendant Todd Michalik has:

a. on information, has resided in and been domiciled in Massachusetts;

b. been the "President" of Marder Trawling, Inc., as that term is defined by the MA Wage Act;

c. acted directly or indirectly in the interest of Marder Trawling, Inc. with regard to its seafood processing operations in New Bedford, MA;

d. had the authority to, *inter alia*, hire and fire, discipline, direct and supervise the plant manager and thereby had the authority to affect the conditions of employment of the Marder Plaintiffs and members of the Collective who were directly hired employees of Marder;

e. been the "employer" of the Marder Plaintiffs and members of the Collective who were directly hired employees of Marder as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law;

f. had the authority to, *inter alia*, hire and fire, discipline, direct and supervise the plant manager and thereby had the authority to affect the conditions of employment for Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs and assigned to work at Marder; and

g. been a joint "employer" of the Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs who were hired by Workforce and assigned to work at Marder as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

30. At all relevant times, Defendant Sean Galligan has:

a. on information, has resided in and been domiciled in Massachusetts;

b. been the "Treasurer" of Marder Trawling, Inc., as that term is defined by the MA Wage Act;

c. acted directly or indirectly in the interest of Marder Trawling, Inc. with regard to its seafood processing operations in New Bedford, MA;

d. had the authority to, *inter alia*, hire and fire, discipline, direct and supervise the plant manager and thereby had the authority to affect the conditions of employment of the Marder Plaintiffs and members of the Collective who were directly hired employees of Marder;

e. been the "employer" of the Marder Plaintiffs and members of the Collective who were directly hired employees of Marder as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law;

f. had the authority to, *inter alia*, hire and fire, discipline, direct and supervise the plant manager and thereby had the authority to affect the conditions of employment for Workforce Plaintiffs, members of the Collective and

Individual Workforce Plaintiffs who were hired by Workforce and assigned to work at Marder; and

g. been a joint "employer" of the Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs who were hired by Workforce and assigned to work at Marder as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law.

31. At all relevant times, Francisco Ixcotoyac Dionicio has:

a. resided in and been domiciled in Lincoln, Rhode Island;

b. been employed by Marder Trawling, Inc. as the Plant Manager of the company's New Bedford, MA seafood processing facility from approximately 2021 to approximately May 27, 2025;

c. acted directly or indirectly in the interest of Marder Trawling, Inc. with regard to its seafood processing operations in New Bedford, MA;

d. had the authority to, *inter alia*, hire and fire, discipline, direct, set schedules for, and set wages for the Marder Plaintiffs and members of the Collective who were directly hired employees of Marder;

e. been the "employer" of the Marder Plaintiffs and members of the Collective who were directly hired employees of Marder as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law;

f. had the authority to, *inter alia*, contract for and terminate the assignment of, discipline, direct, set schedules for, and indirectly set wages for the Workforce Plaintiffs and members of the Collective who were hired by Workforce and assigned to work at Marder;

g. been a joint "employer" of the Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs who were hired by Workforce and assigned to work at Marder as that term is defined by the FLSA, the MA Wage Act and the MA Fair Minimum Wage Law; and

h. has been a "work site employer" of the Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs who were hired by Workforce and assigned to work at Marder as that term is defined by the MA TWRTK Law.

32. At all relevant times, Defendant Workforce Unlimited, Inc. has:

a. been a corporation organized under the laws of the state of Rhode Island, employed residents of Rhode Island and Massachusetts and conducted business within this judicial district;

b. has been a "staffing agency" as that term is defined in the MA TWRTK Law;

c. been an "enterprise" as defined by in Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of Section 3(s)(1)(A) and Defendant's annual gross volume of sales or business done exceeds $500,000, exclusive of excise taxes;

d. had two or more employees who have handled goods which have moved in interstate commerce;

e. had the authority to, *inter alia*, hire and terminate the employment of, contract for and terminate the assignment of, contract out the services of, determine the assignments to Work Site Employers, including Marder, discipline and set wages for the Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs and assigned to work at Marder; and

f. been the "employer" of the Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs who were hired by Workforce and assigned to work at Marder as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law.

33. At all relevant times, Andrew Wilkes has:

a. resided in and been domiciled in Rhode Island;

b. been the principal of Workforce Unlimited, Inc., acting as its President, Treasurer, Secretary and Director;

c. has been a "staffing agency" as that term is defined in the MA TWRTK Law;

d. acted directly or indirectly in the interest of Workforce Unlimited, Inc. with regard to its business of contracting temporary employees;

e. had the authority to, *inter alia*, hire and terminate the employment of, contract for and terminate the assignment of, contract out the services of, determine assignment to other Work Site Employers, including Marder, discipline and set wages for Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs who were hired by Workforce and assigned to work at Marder; and

f. been the "employer" of the Workforce Plaintiffs, members of the Collective and Individual Workforce Plaintiffs who were hired by Workforce and assigned to work at Marder who were hired by Workforce and assigned to

work at Marder as that term is defined by the FLSA, the MA Wage Act, the MA Minimum Wage Law and the MA TWRTK Law.

## V. COMMON FACTS

34. Marder is a seafood processing plant located at 57 Hassey Street in New Bedford, MA ("Marder").

35. Approximately 20% of the workers Marder employs were directly hired by and paid by Marder ("Marder Employees").

36. During the Relevant Time Period, Marder contracted with Workforce for workers who are employed jointly by Workforce and Marder to perform work similar to and side by side with the Marder Direct Hire Employees at Marder's New Bedford sea food processing facility ("Workforce Employees").

37. During the Relevant Time Period, the Workforce Employees were hired and paid by Workforce and Defendant Wilkes and assigned to work at Marder.

38. During the Relevant Time Period, the Workforce Employees were under the control of Marder and its management and supervisory employees, including Marder Defendants Michalik and Galligan and Defendant Ixcotoyac, in that such employees were subject to termination of the assignment by Marder, were using Marder's equipment and facilities, were scheduled by and supervised by Marder employees and were paid wages based on the contracted hourly rate negotiated between Marder and Workforce.

39. Approximately 80% of the workers at Marder came from Workforce.

40. The Marder Defendants hired Francisco Ixcotoyac in approximately 1998 as a floor worker.

41. Between 1998 and 2021, the Marder Defendants promoted Defendant Ixcotoyac to various positions at Marder's New Bedford facility.

42. In 2021, the Marder Defendants promoted Defendant Ixcotoyac to be the Plant Manager at Marder empowering him to be the ultimate authority of the company's New Bedford facility, including in relation to the Marder Employees and the Workforce Employees.

43. During the Relevant Time Period, Defendant Ixcotoyac resided in Rhode Island, which gave him access to an expanded pool of workers beyond the New Bedford region.

44. Defendant Ixcotoyac recruited workers to work at Marder and had an arrangement whereby Defendants Workforce and Wilkes would put those workers on payroll and assign them to Marder.

45. During the Relevant Time Period, Defendant Ixcotoyac owned multiple vans in which he could transport workers from Rhode Island to the Marder facility in New Bedford, MA.

46. During the Relevant Time Period, Defendant Ixcotoyac required the employees he recruited from Rhode Island to be transported to Marder in his vans.

47. During the Relevant Time Period, required the employees he recruited from Rhode Island were required to take transportation to Marder arranged by the Defendants as a condition of employment and were charged approximately $60 per week (or $12 per day), for such transportation.

48. Within the scope of authority granted to Defendant Ixcotoyac by Marder was the cost effective operation of the company's New Bedford facility, including keeping labor cost low.

49. Using the authority granted by the Marder Defendants, Defendant Ixcotoyac set and controlled the hourly rate close to minimum wage permitted in Massachusetts for Marder Employees during the Relevant Time Period.

50. Using the authority granted by the Marder Defendants, Defendant Ixcotoyac set the hourly rate of the Workforce Employees at Marder at or near the minimum wage rate permitted in

Massachusetts by entering into an agreement with Defendants Workforce and Wilkes which reimbursed those Defendants at a certain hourly rate sufficient to pay only at or near the Massachusetts minimum wage.

51. The Marder Defendants were aware or should have been aware with reasonable supervision and inquiry that Defendant Ixcotoyac was setting and controlling the hourly rate for Workforce Employees at Marder at a rate that allowed payment to the Workforce Employees only at or near the minimum wage rate during the Relevant Time Period.

52. Within the Relevant Time Period, the Marder Defendants left it to Defendant Ixcotoyac to supplement his salary from Marder as he saw fit.

53. Within the Relevant Time Period, Defendant Ixcotoyac, acting within the scope of his employment with Marder, supplemented his salary by deducting from the Marder Plaintiff, members of the Marder Collective and Individual Marder Plaintiffs' earned wages, through direct cash payments to Defendant Ixcotoyac, approximately a $100 weekly Extorted Kickback Deduction as a condition of keeping their jobs.

54. The Marder Defendants benefited from the agreement because it was able to retain Defendant Ixcotoyac at a lower salary than the market permitted for a plant manager.

55. The Marder Defendants benefited from the agreement because, through its agent Ixcotoyac, it was able to reduce its labor cost.

56. The Marder Defendants knew or should have known with minimal supervision and inquiry, that the Marder Collective Representative Plaintiff, members of the Marder Collective and Individual Marder Plaintiffs were required to pay the Extorted Kickback Deduction to Marder through its agent in exchange for keeping their jobs.

57. During the Relevant Time Period, in certain individual work weeks, the Marder Collective Representative Plaintiff, members of the Marder Collective and Individual Marder Plaintiffs worked in excess of forty (40) hours.

58. In work weeks during the Relevant Time Period in which the Marder Collective Representative Plaintiff, members of the Marder Collective and Individual Marder Plaintiffs worked in excess of forty (40) hours, they were not paid time and one half their regular hourly wage rate as a result of the Extorted Kickback Deductions.

59. During the Relevant Time Period, Defendant Ixcotoyac, acting within the scope of his employment with Marder, supplemented his salary by deducting from the wages of the Workforce Collective Representative Plaintiffs, members of the Workforce Collective and Individual Workforce Plaintiffs, through direct cash payments, approximately a $100 weekly Extorted Kickback Deduction paid to Defendants as a condition of employment.

60. During the Relevant Time Period, Defendant Ixcotoyac, acting within the scope of his employment with Marder, supplemented his salary by deducting from the wages of the Workforce Collective Representative Plaintiffs, members of the Workforce Collective and Individual Workforce Plaintiffs who lived in Rhode Island, through direct cash payments, an approximately $60 weekly charge for rides in vans owned and operated by Defendant Ixcotoyac from Rhode Island to the Marder facility in New Bedford, MA and back to Rhode Island, or approximately a $12.00 daily ride charge, as a condition of employment.

61. The Marder Defendants benefited from the agreement because it was able to retain Defendant Ixcotoyac at a lower salary than the market permitted for a plant manager.

62. The Marder Defendants knew or should have known with reasonable supervision and inquiry that the Workforce Collective Representative Plaintiffs, members of the Workforce

Collective and Individual Workforce Plaintiffs were required to pay the Extorted Kickback Deduction to Marder in exchange for keeping their jobs.

63. The Marder Defendants knew or should have known with reasonable supervision and inquiry that the Workforce Collective Representative Plaintiffs, members of the Workforce Collective and Individual Workforce Plaintiffs were required to pay the Excessive Ride Charge Deduction in exchange for keeping their jobs.

64. The Workforce Defendants benefitted from the agreement because the agreement with Defendants Ixcotoyac and Marder assured the Workforce Defendants that the Marder Defendants and Ixcotoyac would continue to contract with Defendants Workforce and Wilkes for their employees.

65. Within the Relevant Time Period, as a result of the Extorted Kickback Deductions and/or Excessive Ride Charge Deductions, the hourly wage rate of the Workforce Collective and Individual Workforce Plaintiffs fell below the then-applicable Massachusetts minimum wage rate while working at Marder.

66. During the Relevant Time Period, in certain work weeks, Workforce Collective and Individual Workforce Plaintiffs worked in excess of forty (40) hours.

67. In work weeks during the Relevant Time Period in which Workforce Collective and Individual Workforce Plaintiffs worked in excess of forty (40) hours at Marder, they were not paid time and one half their regular hourly wage rate as a result of the Extorted Kickback Deductions and/or Excessive Ride Charge Deductions.

68. Defendants Workforce and Wilkes did not provide the Workforce Collective and Individual Workforce Plaintiffs with notice of the fees charged to them for transportation,

including the Excessive Ride Charge Deductions, by the Workforce Defendants and/or the Marder Defendants and Ixcotoyac, or about their rights under the MA TWRTK Law.

69. The Workforce Defendants did not provide the Workforce Collective and Individual Workforce Plaintiffs with a notice containing information about their rights under the MA TWRTK Law.

**COUNT I**
**Violation of the FLSA – Overtime Wages "Free and Clear"**
***All Workforce Plaintiffs on behalf of themselves and the Workforce Collective against all Defendants***
**Section 216(b) Collective Action**

70. Plaintiffs incorporate and re-allege paragraphs 1 through 69 as though set forth herein.

71. This Count arises from a violation of the FLSA for Defendants' failure to pay the overtime wages to Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective "free and clear."

72. Defendants suffered and permitted Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective to work in excess of forty (40) hours in individual work weeks since 2021.

73. Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective were entitled to be paid their wages "free and clear" without deduction, including overtime wages in weeks in which they worked more than forty (40) hours.

74. During the Relevant Time Period, as a result of the reduction in their salary due to the Extorted Kickback Deductions implemented by Defendants as described more fully, *supra*, Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective were not paid their overtime wages "free and clear" as required by the FLSA.

75. During the Relevant Time Period, as a result of the reduction in their salary due to the Excessive Ride Charge Deductions implemented by Defendants as described more fully, *supra*, Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and assigned to work at Marder and who resided in Rhode Island were not paid their overtime wages "free and clear" as required by the FLSA.

76. Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and assigned to work at Marder and who resided in Rhode Island were entitled to be paid at time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks without reduction of their earned wages.

77. During the Relevant Time Period, Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and assigned to work at Marder and who resided in Rhode Island were not paid time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks without reduction of their earned wages as described more fully, *supra*.

78. Defendants' failure to pay Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and assigned to work at Marder and who resided in Rhode Island at time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks during the Relevant Time Period was a violation of the FLSA.

79. Defendant's failure to pay Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and

assigned to work at Marder and who resided in Rhode Island at time and a half their regular rate of pay for all time worked in excess of forty (40) in individual work week during the Relevant Time Period was willful.

80. Pursuant to the FLSA, Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and assigned to work at Marder and who resided in Rhode Island are entitled to recover unpaid overtime wages for three (3) years prior to the filing of this suit because Defendant's violation was willful.

81. Defendants conduct in denying Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and assigned to work at Marder and who resided in Rhode Island their overtime wages was coercive and oppressive in that Defendants preyed on vulnerable low-wage workers.

82. Because Defendants conduct in denying Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and assigned to work at Marder and who resided in Rhode Island their overtime wages was coercive and oppressive, Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective who were hired by Workforce and assigned to work at Marder and who resided in Rhode Island are entitled to equitable tolling of the statute of limitation and are entitled to recover overtime wages since January 1, 2021 when Defendants began their scheme to extort the Extorted Kickback Deductions and Excessive Ride Charge Deductions from Collective Plaintiffs, the Individual Plaintiffs and the Collective.

WHEREFORE, Workforce Representative Plaintiffs and Workforce Individual Plaintiffs pray for a judgment against Defendants as follows:

A. That the Court determine that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

B. A judgment against all Defendants for Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective in the amount of unpaid overtime wages due to Workforce Representative Plaintiffs, Workforce Individual Plaintiffs and members of the Workforce Collective as provided by the FLSA;

C. Liquidated damages in the amount equal to the unpaid overtime wages;

D. That the Court equitably toll the statute of limitation of the FLSA claims to January 1, 2021;

E. That the Court declare that Defendants violated the FLSA;

F. That the Court enjoin Defendant from violating the FLSA;

G. Reasonable attorneys' fees and costs of this action as provided by the FLSA.; and

H. Such other and further relief as this Court deems appropriate and just.

**COUNT II**
**Violation of the FLSA – Overtime Wages "Free and Clear"**
***All Marder Plaintiffs on behalf of themselves and the Marder Collective against all Marder Defendants and Defendant Ixcotoyac***
**Section 216(b) Collective Action**

83. Plaintiffs incorporate and re-allege paragraphs 1 through 82 as though set forth herein.

84. This Count arises from a violation of the FLSA for Defendants' failure to pay the overtime wages to Marder Representative Plaintiffs, Marder Individual Plaintiffs and members of the Marder Collective "free and clear."

85. Defendants suffered and permitted Marder Representative Plaintiffs, Marder Individual Plaintiffs and members of the Marder Collective to work in excess of forty (40) hours in individual work weeks since 2021.

86. The Marder Representative Plaintiffs, Marder Individual Plaintiffs and members of the Marder Collective were entitled to be paid their wages "free and clear" without deduction, including overtime wages in weeks in which they worked more than forty (40) hours.

87. During the Relevant Time Period, as a result of the reduction in their salary due to the Extorted Kickback Deductions implemented by Defendants as described more fully, *supra*, Marder Representative Plaintiffs, Marder Individual Plaintiffs and members of the Marder Collective were not paid their overtime wages "free and clear" as required by the FLSA.

88. During the Relevant Time Period, as a result of the reduction in their salary due to the Excessive Ride Charge Deductions implemented by Defendants as described more fully, *supra*, Marder Individual Plaintiffs who were hired by Marder and who resided in Rhode Island were not paid their overtime wages "free and clear" as required by the FLSA.

89. Marder Individual Plaintiffs who were hired by Marder and who resided in Rhode Island were entitled to be paid at time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks without reduction of their earned wages.

90. During the Relevant Time Period, Marder Individual Plaintiffs who were hired by Marder and who resided in Rhode Island were not paid time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks without reduction of their earned wages as described more fully, *supra*.

91. Defendants' failure to pay Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective who were hired by Marder and who resided in Rhode Island at time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks during the Relevant Time Period was a violation of the FLSA.

92. Defendant's failure to pay Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective hired to work at Marder and who resided in Rhode Island at time and a half their regular rate of pay for all time worked in excess of forty (40) in individual work week during the Relevant Time Period was willful.

93. Pursuant to the FLSA, Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective hired to work at Marder and who resided in Rhode Island are entitled to recover unpaid overtime wages for three (3) years prior to the filing of this suit because Defendant's violation was willful.

94. Defendants conduct in denying Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective who were hired to work at Marder and who resided in Rhode Island their overtime wages was coercive and oppressive in that Defendants preyed on vulnerable low-wage workers.

95. Because Defendants conduct in denying Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective who were hired to work at Marder and who resided in Rhode Island their overtime wages was coercive and oppressive, Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective who were hired to work at Marder and who resided in Rhode Island are entitled to equitable tolling of the statute of limitation and are entitled to recover overtime wages since January 1, 2021 when Defendants began their scheme to extort the Extorted Kickback Deductions and Excessive Ride Charge Deductions from Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective.

WHEREFORE, Marder Representative Plaintiff and Marder Individual Plaintiffs pray for a judgment against the Marder Defendants as follows:

A. That the Court determine that this action may be maintained as a collective action pursuant to Section 216(b) of the FLSA;

B. A judgment against all Defendants for Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective in the amount of unpaid overtime wages due to Marder Representative Plaintiff, Marder Individual Plaintiffs and members of the Marder Collective as provided by the FLSA;

C. Liquidated damages in the amount equal to the unpaid overtime wages;

D. That the Court equitably toll the statute of limitation of the FLSA claims to January 1, 2021;

E. That the Court declare that the Marder Defendants violated the FLSA;

F. That the Court enjoin the Marder Defendants from violating the FLSA;

G. Reasonable attorneys' fees and costs of this action as provided by the FLSA.; and

H. Such other and further relief as this Court deems appropriate and just.

**COUNT III**
**Violation of MA Minimum Wage Law and the MA Wage Act – Overtime Wages**
***All Marder Plaintiffs against all Marder Defendants and Defendant Ixcotoyac***

96. Plaintiffs incorporate and re-allege paragraphs 1 through 95 as though set forth herein.

97. This Count arises from a violation of the MA Minimum Wage Law and the MA Wage Act for the Marder Defendants' failure to pay the overtime wages to the Marder Plaintiffs.

98. The Marder Defendants suffered and permitted the Marder Plaintiffs to work in excess of forty (40) hours in individual work weeks since 2021.

99. The Marder Plaintiffs were entitled to be paid their wages without deduction, including overtime wages in weeks in which they worked more than forty (40) hours.

100. During the Relevant Time Period, as a result of the reduction in their salary due to the Extorted Kickback Deductions implemented by the Marder Defendants as described more

fully, *supra*, the Marder Plaintiffs were not paid all of their overtime wages as required by the MA Minimum Wage Law.

101. During the Relevant Time Period, as a result of the reduction in their salary due to the Extorted Kickback Deductions implemented by the Marder Defendants as described more fully, *supra*, Plaintiffs were not timely paid all of their overtime wages as required by the MA Wage Act.

102. During the Relevant Time Period, as a result of the reduction in their salary due to the Excessive Ride Charge Deductions implemented by the Marder Defendants as described more fully, *supra*, Plaintiffs were not paid all of their overtime wages as required by the MA Minimum Wage Law.

103. During the Relevant Time Period, as a result of the reduction in their salary due to the Excessive Ride Charge Deductions implemented by the Marder Defendants as described more fully in, *supra*, the Marder Plaintiffs from Rhode Island were not timely paid all of their overtime wages as required by the MA Wage Act.

104. The Marder Plaintiffs were entitled to be paid at time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks without reduction of their earned wages.

105. During the Relevant Time Period, the Marder Plaintiffs were not paid time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks without reduction of their earned wages as described more fully, *supra*.

106. The Marder Defendants' failure to pay Plaintiffs at time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks during the Relevant Time Period was a violation of the MA Minimum Wage Law.

107. The Marder Defendants' failure to timely pay the Marder Plaintiffs at time and a half their regular rate of pay for all time worked in excess of forty (40) in individual work weeks was a violation of the MA Wage Act.

108. Pursuant to the MA Minimum Wage Law, the Marder Plaintiffs are entitled to recover unpaid overtime wages for three (3) years prior to the filing of this suit.

109. Pursuant to the MA Wage Act, the Marder Plaintiffs are entitled to recover unpaid overtime wages for three (3) years prior to the filing of this suit.

110. The Marder Defendants conduct in denying the Marder Plaintiffs their overtime wages was coercive and oppressive in that the Marder Defendants preyed on vulnerable low-wage workers.

111. Because the Marder Defendants conduct in denying Plaintiffs their overtime wages was coercive and oppressive, Plaintiffs are entitled to equitable tolling of the statute of limitation and are entitled to recover overtime wages since January 1, 2021.

WHEREFORE, the Marder Plaintiffs pray for a judgment against the Marder Defendants as follows:

A. A judgment in the amount of unpaid overtime wages due to the Marder Plaintiffs as provided by the MA Minimum Wage Law and MA Wage Act;

B. Treble damages as provided for by the MA Minimum Wage Law and MA Wage Act;

C. That the Court equitably toll the statute of limitation of the MA Minimum Wage Law and MA Wage Act claims to January 1, 2021;

D. That the Court declare that the Marder Defendants violated the MA Minimum Wage Law and MA Wage Act;

E. That the Court enjoin the Marder Defendants from violating the MA Minimum Wage Law and MA Wage Act;

F. Reasonable attorneys' fees and costs of this action as provided by the MA Minimum Wage Law and MA Wage Act; and

G. Such other and further relief as this Court deems appropriate and just.

**COUNT IV**
**Violation of MA Minimum Wage Law and the MA Wage Act – Overtime Wages**
***All Workforce Plaintiffs on behalf of themselves and the Workforce Collective against all Defendants***

112. Plaintiffs incorporate and re-allege paragraphs 1 through 111 as though set forth herein.

113. This Count arises from a violation of the MA Minimum Wage Law and the MA Wage Act for the Defendants' failure to pay the overtime wages to the Workforce Plaintiffs.

114. The Defendants suffered and permitted the Workforce Plaintiffs to work in excess of forty (40) hours in individual work weeks since 2021.

115. The Workforce Plaintiffs were entitled to be paid their wages without deduction, including overtime wages in weeks in which they worked more than forty (40) hours.

116. During the Relevant Time Period, as a result of the reduction in their salary due to the Extorted Kickback Deductions implemented by the Defendants as described more fully, *supra*, the Workforce Plaintiffs were not paid all of their overtime wages as required by the MA Minimum Wage Law.

117. During the Relevant Time Period, as a result of the reduction in their salary due to the Extorted Kickback Deductions implemented by the Defendants as described more fully, *supra*, Workforce Plaintiffs were not timely paid all of their overtime wages as required by the MA Wage Act.

118. During the Relevant Time Period, as a result of the reduction in their salary due to the Excessive Ride Charge Deductions implemented by the Defendants as described more fully, *supra*, Workforce Plaintiffs were not paid all of their overtime wages as required by the MA Minimum Wage Law.

119. During the Relevant Time Period, as a result of the reduction in their salary due to the Excessive Ride Charge Deductions implemented by the Defendants as described more fully in, *supra*, the Workforce Plaintiffs from Rhode Island were not timely paid all of their overtime wages as required by the MA Wage Act.

120. The Workforce Plaintiffs were entitled to be paid at time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks without reduction of their earned wages.

121. During the Relevant Time Period, the Workforce Plaintiffs were not paid time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks without reduction of their earned wages as described more fully, *supra*.

122. The Defendants' failure to pay Workforce Plaintiffs at time and a half their regular rate of pay for all time worked in excess of forty (40) hours in individual work weeks during the Relevant Time Period was a violation of the MA Minimum Wage Law.

123. The Defendants' failure to timely pay the Workforce Plaintiffs at time and a half their regular rate of pay for all time worked in excess of forty (40) in individual work weeks was a violation of the MA Wage Act.

124. Pursuant to the MA Minimum Wage Law, the Workforce Plaintiffs are entitled to recover unpaid overtime wages for three (3) years prior to the filing of this suit.

125. Pursuant to the MA Wage Act, the Workforce Plaintiffs are entitled to recover unpaid overtime wages for three (3) years prior to the filing of this suit.

126. The Defendants conduct in denying the Workforce Plaintiffs their overtime wages was coercive and oppressive in that the Defendants preyed on vulnerable low-wage workers.

127. Because the Defendants conduct in denying Workforce Plaintiffs their overtime wages was coercive and oppressive, Workforce Plaintiffs are entitled to equitable tolling of the statute of limitation and are entitled to recover overtime wages since January 1, 2021.

WHEREFORE, the Workforce Plaintiffs pray for a judgment against Defendants as follows:

A. A judgment in the amount of unpaid overtime wages due to the Workforce Plaintiffs as provided by the MA Minimum Wage Law and MA Wage Act;

B. Treble damages as provided for by the MA Minimum Wage Law and MA Wage Act;

C. That the Court equitably toll the statute of limitation of the MA Minimum Wage Law and MA Wage Act claims to January 1, 2021;

D. That the Court declare that the Defendants violated the MA Minimum Wage Law and MA Wage Act;

E. That the Court enjoin the Defendants from violating the MA Minimum Wage Law and MA Wage Act;

F. Reasonable attorneys' fees and costs of this action as provided by the MA Minimum Wage Law and MA Wage Act; and

G. Such other and further relief as this Court deems appropriate and just.

**COUNT V**
**Violation of the MA Wage Act**
**Unlawful Extorted Kickback Deductions and/or Excessive Ride Charge Deductions**
***All Marder Plaintiffs against all Marder Defendants and Defendant Ixcotoyac***

128. Plaintiffs incorporate and re-allege paragraphs 1 through 127 as though set forth herein.

129. This Count arises from a violation of the MA Wage Act for the Marder Defendants' unlawful deductions from the wages of the Marder Plaintiffs for Extorted Kickback Deductions and/or Excessive Ride Charge Deductions.

130. The Marder Plaintiffs were entitled to be paid their wages without unlawful deductions.

131. The Extorted Kickback Deductions implemented by the Marder Defendants in which the Marder Plaintiffs were required to pay a kickback to Defendants, as described more fully, *supra,* constituted an unlawful deduction from the Marder Plaintiffs wages in violation of the MA Wage Act.

132. The Excessive Ride Charge Deductions from some of the Marder Plaintiffs implemented by the Marder Defendants in which these Plaintiffs were required to pay an unlawful ride charge to Defendants as described more fully in, *supra,* constituted an unlawful deduction from the Marder Plaintiffs wages in violation of the MA Wage Act.

133. During the Relevant Time Period, the Extorted Kickback Deductions and/or Excessive Ride Charge Deductions were taken from the Marder Plaintiffs by the Marder Defendants coercively and without authorization.

134. Pursuant to the MA Wage Act, the Marder Plaintiffs are entitled to recover funds unlawfully deducted from their wages for a period of three (3) years prior to the filing of this suit.

135. The Marder Defendants' conduct in making unlawful deductions from the wages of the Marder Plaintiffs was coercive and oppressive in that the Marder Defendants preyed on vulnerable low-wage workers.

136. Because the Marder Defendants' conduct in in making unlawful deductions from the wages of the Marder Plaintiffs was coercive and oppressive, the Marder Plaintiffs are entitled to equitable tolling of the statute of limitation and are entitled to unlawfully deducted funds since January 1, 2021.

WHEREFORE, the Marder Plaintiffs pray for a judgment against the Marder Defendants

as follows:

A. A judgment in the amount of unlawfully deducted wages due to the Marder Plaintiffs as provided by the MA Wage Act;

B. Treble damages as provided for by the MA Wage Act;

C. That the Court equitably toll the statute of limitation of the MA Wage Act claims to January 1, 2021;

D. That the Court declare that the Marder Defendants violated the MA Wage Act;

E. That the Court enjoin the Marder Defendants from violating the MA Wage Act;

F. Reasonable attorneys' fees and costs of this action as provided by the MA Wage Act; and

G. Such other and further relief as this Court deems appropriate and just.

**COUNT VI**
**Violation of the MA Wage Act**
**Unlawful Extorted Kickback Deductions and/or Excessive Ride Charge Deductions**
***All Workforce Plaintiffs against all Defendants***

137. Plaintiffs incorporate and re-allege paragraphs 1 through 136 as though set forth herein.

138. This Count arises from a violation of the MA Wage Act for the Defendants' unlawful deductions from the wages of the Workforce Plaintiffs for Extorted Kickback Deductions and/or Excessive Ride Charge Deductions.

139. The Workforce Plaintiffs were entitled to be paid their wages without unlawful deductions.

140. The Extorted Kickback Deductions implemented by the Defendants in which the Workforce Plaintiffs were required to pay a kickback to Defendants, as described more fully, *supra*, constituted an unlawful deduction from the Workforce Plaintiffs wages in violation of the MA Wage Act.

141. The Excessive Ride Charge Deductions from some of the Workforce Plaintiffs implemented by the Defendants in which these Plaintiffs were required to pay an unlawful ride charge to Defendants as described more fully in, *supra,* constituted an unlawful deduction from the Marder Plaintiffs wages in violation of the MA Wage Act.

142. During the Relevant Time Period, the Extorted Kickback Deductions and/or Excessive Ride Charge Deductions were taken from the Workforce Plaintiffs by the Defendants coercively and without authorization.

143. Pursuant to the MA Wage Act, the Workforce Plaintiffs are entitled to recover funds unlawfully deducted from their wages for a period of three (3) years prior to the filing of this suit.

144. The Defendants' conduct in making unlawful deductions from the wages of the Workforce Plaintiffs was coercive and oppressive in that the Defendants preyed on vulnerable low-wage workers.

145. Because the Defendants' conduct in in making unlawful deductions from the wages of the Workforce Plaintiffs was coercive and oppressive, the Workforce Plaintiffs are entitled to equitable tolling of the statute of limitation and are entitled to unlawfully deducted funds since January 1, 2021.

WHEREFORE, the Workforce Plaintiffs pray for a judgment against Defendants as follows:

A. A judgment in the amount of unlawfully deducted wages due to the Workforce Plaintiffs as provided by the MA Wage Act;

B. Treble damages as provided for by the MA Wage Act;

C. That the Court equitably toll the statute of limitation of the MA Wage Act claims to January 1, 2021;

D. That the Court declare that the Defendants violated the MA Wage Act;

E. That the Court enjoin the Defendants from violating the MA Wage Act;

F. Reasonable attorneys' fees and costs of this action as provided by the MA Wage Act; and

G. Such other and further relief as this Court deems appropriate and just.

**COUNT VII**
**Breach of Contract**
***All Marder Plaintiffs against all Marder Defendants and Defendant Ixcotoyac***

146. Plaintiffs incorporate and re-allege paragraphs 1 through 145 as though set forth herein.

147. This Count arises from the Marder Defendants' breach of a contractual employment relationship with the Marder Plaintiffs as described more fully, *supra*.

148. The Marder Plaintiffs and Defendants entered into a binding contract related to their employment under which, *inter alia*, the Marder Defendants agreed to pay the Marder Plaintiffs their earned wages for all time worked.

149. Each Marder Plaintiff performed under this binding contract, but the Marder Defendants breached this agreement by failing to pay the Marder Plaintiffs their full wages as described more fully, *supra*.

150. As a result of the Marder Defendants' conduct, the Marder Plaintiffs have suffered damages.

151. Pursuant to the MA contract law, the Marder Plaintiffs are entitled to recover funds to which they are entitled to pursuant to a contract for a period of six (6) years prior to the filing of this lawsuit.

WHEREFORE, the Marder Plaintiffs pray for a judgment against the Marder Defendants as follows:

A. A judgment in the amount of wages not paid to the Marder Plaintiffs by reason of unlawful kickbacks and charges;

B. Compensatory, reliance and contract-related damages;

C. Pre-judgment and post-judgment interest;

D. Reasonable attorneys' fees and costs of this action; and

E. Such other and further relief as this Court deems appropriate and just.

**COUNT VIII**
**Breach of Contract**
***All Workforce Plaintiffs against all Defendants***

152. Plaintiffs incorporate and re-allege paragraphs 1 through 151 as though set forth herein.

153. This Count arises from the Defendants' breach of a contractual employment relationship with the Workforce Plaintiffs as described more fully, *supra*.

154. The Workforce Plaintiffs and Defendants entered into a binding contract related to their employment under which, *inter alia*, the Defendants agreed to pay the Workforce Plaintiffs their earned wages for all time worked.

155. Each Workforce Plaintiff performed under this binding contract, but the Defendants breached this agreement by failing to pay the Workforce Plaintiffs their full wages as described more fully, *supra*.

156. As a result of the Defendants' conduct, the Workforce Plaintiffs have suffered damages.

157. Pursuant to the MA contract law, the Workforce Plaintiffs are entitled to recover funds to which they are entitled to pursuant to a contract for a period of six (6) years prior to the filing of this lawsuit.

WHEREFORE, the Workforce Plaintiffs pray for a judgment against Defendants as follows:

A. A judgment in the amount of wages not paid to the Workforce Plaintiffs by reason of unlawful kickbacks and charges;

B. Compensatory, reliance and contract-related damages;

C. Pre-judgment and post-judgment interest;

D. Reasonable attorneys' fees and costs of this action; and

E. Such other and further relief as this Court deems appropriate and just.

**COUNT IX**
**Violation of the MA TWRTK Law**
**Unlawful Excessive Ride Charge Deductions**
***Workforce Plaintiffs against all Defendants***

158. Plaintiffs incorporate and re-allege paragraphs 1 through 157 as though set forth herein.

159. This Count arises from a violation of the MA TWRTK Law for Defendants' charge for rides to Workforce Plaintiffs from Rhode Island.

160. Staffing Agencies and Worksite Employers are prohibited from charging staffing agency workers for transportation in an amount greater than actual cost of the transportation.

161. Staffing Agencies and Worksite Employers are prohibited from charging staffing agency workers for transportation in an amount greater than 3% of the staffing agency workers' daily wages under the MA TWRTK Law.

162. Workforce from Rhode Island were entitled to be paid their wages without deduction.

163. During the Relevant Time Period, the Excessive Ride Charges implemented by Defendants in which Workforce Plaintiffs from Rhode Island were required to pay a transportation fee to Defendants as described more fully, *supra* were in an amount greater than actual cost of the transportation.

164. During the Relevant Time Period, the Excessive Ride Charges charged to Workforce Plaintiffs from Rhode Island in an amount greater than actual cost of the transportation were in violation of the MA TWRTK Law.

165. During the Relevant Time Period, the Excessive Ride Charges implemented by Defendants in which Workforce Plaintiffs from Rhode Island were required to pay a transportation charge to Defendants as described more fully, *supra* were in an amount greater than 3% of their daily wages.

166. During the Relevant Time Period, the Excessive Ride Charges charged to Workforce Plaintiffs from Rhode Island in an amount greater than 3% of their daily wages were in violation of the MA TWRTK Law.

167. Pursuant to the MA TWRTK Law, Workforce Plaintiffs from Rhode Island are entitled to recover funds unlawfully charged to them for transportation by Defendants for a period of three (3) years prior to the filing of this suit.

168. Defendants' conduct in charging unlawful amounts for transportation to Workforce Plaintiffs from Rhode Island during the Relevant Time Period was coercive and oppressive in that Defendants preyed on vulnerable low-wage workers.

169. Because Defendants conduct in charging unlawful amounts for transportation to Workforce Plaintiffs from Rhode Island was coercive and oppressive, Workforce Plaintiffs from Rhode Island are entitled to equitable tolling of the statute of limitation and are entitled to unlawfully deducted funds since January 1, 2021.

WHEREFORE, Workforce Plaintiffs from Rhode Island pray for a judgment against Defendants as follows:

A. A judgment in the amount of Excessive Ride Charge charged to Plaintiffs Workforce Plaintiffs from Rhode Island as provided by the MA TWRTK Law and the MA Wage Act;

B. Treble damages as provided for by the MA TWRTK Law;

C. That the Court equitably toll the statute of limitation of the MA TWRTK Law claims to January 1, 2021;

D. That the Court declare that Defendants violated the MA TWRTK Law;

E. That the Court enjoin Defendants from violating the MA TWRTK Law;

F. Reasonable attorneys' fees and costs of this action as provided by the MA TWRTK Law; and

G. Such other and further relief as this Court deems appropriate and just.

**COUNT X**
**Violation of the MA TWRTK Law – Notice Violation**
***Workforce Plaintiffs against the Workforce Defendants***

170. Plaintiffs incorporate and re-allege paragraphs 1 through 169 as though set forth herein.

171. This Count arises from a violation of the MA TWRTK Law for the Workforce Defendants' failure to provide the Workforce Plaintiffs with a notice containing, *inter alia*, an accurate cost of transportation.

172. The Workforce Plaintiffs were entitled to receive a notice containing, *inter alia*, an accurate cost of transportation.

173. During the Relevant Time Period, the Workforce Plaintiffs did not receive a check stub with an itemization of all hours worked, wages paid and deductions made.

WHEREFORE, the Workforce Plaintiffs pray for a judgment against the Workforce Defendants as follows:

A. That the Court declare that the Workforce Defendants violated the MA TWRTK Law;

B. That the Court enjoin the Workforce Defendants from violating the MA TWRTK Law;

C. Reasonable attorneys' fees and costs of this action as provided by the MA TWRTK Law; and

D. Such other and further relief as this Court deems appropriate and just.

**COUNT XI**
**Violation of the MA Wage Act -– Retaliation**
***Plaintiffs Maily Adriana Velasquez Morales, Suar Panjoj, Evelyn Velasquez Morales, Gonzalez Cahuec and Larios Zacarias against all Defendants***

174. Plaintiffs incorporate and re-allege paragraphs 1 through 173 as though set forth herein.

175. Since at least June of 2025, Plaintiffs Maily Velasquez Morales, Suar Panjoj, Evelyn Velasquez Morales, Gonzalez Cahuec and Larios Zacarias opposed Defendants' scheme to extort money from themselves and others who worked at Marder, either as direct hires or through Workforce.

176. Among other things, Plaintiffs Maily Adriana Velasquez Morales, Suar Panjoj, Evelyn Velasquez Morales, Gonzalez Cahuec and Larios Zacarias opposed Defendants' scheme to collect the Extorted Kickback Deductions and Excessive Ride Charge Deductions in violation of the MA Wage Act by, *inter alia*:

a. Among other things, Plaintiffs Maily Adriana Velasquez Morales, Suar Panjoj, Evelyn Velasquez Morales, Gonzalez Cahuec and Larios Zacarias opposed Defendants' scheme to collect the Extorted Kickback Deductions and Excessive Ride Charge Deductions in violation of the MA Wage Act by, *inter alia*:

b. attending meetings in at least May and June of 2025 with coworkers in order to raise collective concerns about the extortion, wage theft, abuse, sexual harassment and sexual assault occurring in the workplace;

c. helping to prepare, draft, or deliver a letter or letters to Marder regarding the aforementioned conduct, and publicly identifying themselves as victims of the extortion scheme amongst their coworkers and mid-level supervisory coworkers and

d. On or about October 24, 2025, Plaintiffs Maily Adriana Velasquez Morales, Lorenzo Suar Panjoj, with others, filed a putative class action lawsuit alleging Defendants violated the MA Wage Act and other statutes.

177. Defendants were aware that Plaintiffs Maily Adriana Velasquez Morales, Suar Panjoj, Evelyn Velasquez Morales, Gonzalez Cahuec and Larios Zacarias were opposing conduct by Defendants' that violated the MA Wage Act and other statutes.

178. Defendants unlawfully terminated Plaintiffs Maily Adriana Velasquez Morales, Suar Panjoj, Evelyn Velasquez Morales, Gonzalez Cahuec and Larios Zacarias in retaliation for engaging in protected conduct.

179. As a result of Defendants' actions, Plaintiffs Maily Adriana Velasquez Morales, Suar Panjoj, Evelyn Velasquez Morales, Gonzalez Cahuec and Larios Zacarias have suffered damages.

WHEREFORE, the Plaintiffs pray for a judgment against Defendants as follows:

A. That the Court declare that Defendants violated the MA Wage Act;

B. Compensatory and consequential damages;

C. Mandatory treble or multiple damages pursuant to the MA Wage Act all other applicable statutes;

D. Reasonable attorneys' fees and costs of this action as provided by MA Wage Act; and

E. Such other and further relief as this Court deems appropriate and just.

Respectfully Submitted

Dated: July 31, 2026

*/s/Keally Cieslik*
Keally Cieslik (MA BBO 716810)
*Certified Under SJC Rule 3:04*
*pro hac vice motion pending*
kcieslik@jatwork.org
Claudia V. Torres Patina (MA. BBO 716207)
ctorres@jatwork.orgJustice at Work
33 Harrison Ave # 501
Boston, MA 02111
(617) 865-8419

Christopher J. Williams (IL ARDC #6284262)
*pro hac vice motion pending*
cwilliams@workers-law-office.com
Workers' Law Office
1341 W. Fullerton Ave, Suite 147
Chicago, Illinois 60614
(312) 725-3696

Keren Salim (NC ID #59847)
keren@glow.law
*Pro hac vice petition granted*
Grassroots Law & Organizing for Workers
1 N. LaSalle Street, Suite 1275
Chicago, Illinois 60602
(888) 610-7752

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Keally Cieslik, hereby certify that a true and accurate copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on July 31, 2026.

**Marder Trawling**
Jennifer L. Markowski; Alexandra F. Held
Freeman Mathis & Gary, LLP
One Boston Place 201 Washington Street Boston, MA, 02108
jennifer.markowski@fmglaw.com
Alexandra.held@fmglaw.com

**Workforce Unlimited**
John S. Gannon; Meaghan E. Murphy
Skoler & Abbott
One Monarch Place, Suite 2000
Springfield, MA 01144
jgannon@skoler-abbott.com
mmurphy@skoler-abbott.com

**Francisco Ixcotoyac Dionicio**
J. Dixon-Acosta, Esq.
JDA Esquire Solutions LLC
387 Atwells Avenue
Providence, RI 02909
jadaesq@gmail.com

*/s/ Keally Cieslik*
Keally Cieslik

*One of Plaintiffs' Attorneys*

Dated: July 31, 2026